**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Equal Employment Opportunity** | ) | **CASE NO. 1:06 CV 2371** |
| **Commission,** | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DHL Express (USA), Inc.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |


<u>**Introduction**</u>

This matter is before the Court upon Motion of Defendant DHL Express (USA), Inc.

for Summary Judgment (Doc. 18).   For the following reasons, the motion is GRANTED.

<u>**Facts**</u>

Plaintiff, Equal Employment Opportunity Commission (hereafter, plaintiff), filed this

Complaint against defendant, DHL Express (USA), Inc. (hereafter, defendant or DHL),

alleging that defendant failed to hire John T. Stricker (hereafter, Stricker) because of his age.

In 2005, DHL solicited applications for "casual" courier/delivery drivers in the

Cleveland Plain Dealer and on Monster.com. The Plain Dealer advertisement listed the

1

minimum requirements for the position: "must be 21 years of age with a clean driving record

and Class A or B CDL [Commercial Drivers License] with Airbrakes and Hazmat

endorsements."   The Monster.Com advertisement identified the minimum qualifications:

"CDL License (Class A or B)with Hazmat and Airbrakes endorsement; clean driving record

and good customer service skills; must be at least 21 years old; must have a flexible schedule;

pre-employment drug screening and background check required."  The latter also stated the

"desired qualifications" of the position: "Previous professional driving experience, preferably

in a delivery role; good knowledge of delivery area; high school diploma or equivalent."   The

Plain Dealer advertisement stated that applicants should apply in person at DHL's

Middleburg Heights or Beachwood, Ohio locations, or by mail to either of these facilities.

(Doc. 18 Exs. 3 and 4)

  John Stricker's deposition testimony establishes the following.  Stricker, who was 53

years old, applied for the position with DHL three times prior to filing the EEOC charge

which is the basis of the lawsuit herein. Each time he submitted his application in person.  In

January 2005, Stricker saw the Plain Dealer advertisement for the casual courier/driver

position.  He filled out an application and submitted a resume to DHL's Middleburg Heights

facility. After a second advertisement ran in the Cleveland Plain Dealer on or about February

20, 2005, Stricker again applied for the courier position.  He submitted his application and

resume at both DHL's Middleburg Heights and Beachwood facilities. Stricker applied to

DHL, again at both facilities, for a third time on or about March 1, 2005.

  While at the Middleburg Heights facility in March 2005, Stricker asked the

receptionist  whether there was someone he could speak to "to see what they're (DHL)

looking for."  After a few minutes, Joe George, the person primarily responsible for hiring at that location, came out to speak with Stricker.   At the time, Stricker had on a pair of nylon running pants and a sweatshirt or jacket.  Stricker then asked George, "Exactly what is DHL looking for?" George responded that DHL was looking for individuals with a "CDL Class B, Haz-Mat, air brakes and good driving record." Stricker told George that he had met these requirements, had already applied two times, and had not heard anything from DHL. Shortly thereafter, the conversation ended and Stricker walked out.

George testified that he reviewed Stricker's application and after his conversation with Stricker made a decision not to hire him because his application did not show relevant driving experience and he did not present well in person as he did not communicate well and appeared unprepared.

Two days after his conversation with George, Stricker received a letter from DHL stating in part, "Although your credentials are impressive, we have determined that your qualifications do not suit our needs at this time."  The letter was not signed but concluded with, "Sincerely, Human Resources." (Doc. 18 Ex. 11) On March 8, 2005, Stricker filed his charge of age discrimination with the EEOC.  (Doc. 18 Ex. 12)

Following the filing of his EEOC charge, Stricker continued to apply with DHL for a casual courier position through July 2005.  He applied four additional times.  During this time, Stricker recalls speaking with an individual at the Beachwood facility and asking him, "What exactly are you looking for, as far as requirements?"  According to Stricker, the man responded, "CDL Class B, you know, Haz-Mat, good driving record, air brakes."  Ron Dargay, district field services manager of the Beachwood facility at the time, recalls speaking

3

with Stricker about the requirements of the courier position. Dargay testified that after his conversation with Stricker, he informed the individual responsible for hiring not to consider Stricker for the position because "that isn't the type of person we're looking to hire at DHL." Dargay made this statement based on Stricker's "appearance and demeanor."  Dargay had observed that Stricker's clothes were dirty and that he had "an aggressive presence."  Dargay had not reviewed Stricker's application for employment.

Stricker testified that, until his retirement, he had been employed by the City of Cleveland as a firefighter.  Prior to that he worked for the City of Cleveland as a meter reader. To supplement his firefighter income he had part-time jobs which included delivery experience.  In particular, he delivered phone books on a part-time seasonal basis in the 1970s until the mid- 1980s; he delivered products for his younger brothers' plating business in the mid-1980s; for a few months in the mid-1980s he delivered flowers on a part-time seasonal basis; for two months on a part-time basis in the early 1980s he made deliveries for a business called Special Service Delivery; for a couple months during two years in the early 1980s he delivered flags and other things for the Firefighters' Burn Unit.  Stricker testified, however, that he did not include this specific part-time delivery experience on his applications or resumes submitted to DHL:

> On my resume, I put down that I had several part-time jobs, and I listed the trucks that I drove.  I did not go into detail because when I delivered part-time, that was back in the '80s.

(Stricker depo. 27).  Stricker further testified that he did not list the delivery jobs on his application because there were not enough pages, and he did not list this experience on his resume because "they were short time, casual, seasonal jobs."  (*Id.* 86)

4

Plaintiff submits the applications and resumes that Stricker submitted to DHL in 2005. (Doc. 20 Ex. B) The applications submitted between January and April 2005 list Stricker's prior employment as an aircraft firefighter at Cleveland Hopkins Airport between 1977 and 2004, a City of Cleveland Water Department meter reader between 1974 and 1977 and a maintenance worker at Benedictine High School between 1997 and 2000.  Beginning in May 2005, Stricker listed his employment as a driver/guard with Dunbar Armored between April 2005 and May 2005.  In his final application, he states that he was currently employed by Priority Vending as a vending route driver.  The applications do not identify any further delivery experience. With regard to such experience, Stricker's resumes identify the following.  One resume does not list any delivery experience.  Two resumes state, "Part-time Employment during my Years as a Firefighter" which included, "Drove a Straight Truck for a Delivery Service- 1 year."  The remaining resumes identify "Part-time Employment during my Years as a Firefighter" as including, "Drove a Straight Truck & Box Truck for several different Delivery Services and also delivered with my own vehicles as a Sub Contractor." (*Id.*)

From the time Stricker submitted his applications to DHL in January 2005 through July 2005, defendant hired other individuals for the position.  Plaintiff submits a document listing eight employees hired by DHL in the Cleveland area in February and March 2005. Two are over the age of 40 (44 and 45 years of age), and one of the two was hired after Stricker filed his EEOC charge on March 8, 2005.  (Doc. 20 Ex. L).  Defendant submits evidence showing that from applications submitted between January 1, 2005 and July 31, 2005, DHL hired ten (out of 26) individuals over the age of 40.  (Doc. 18 Exs. 7 and 8)

5

Plaintiff thereafter filed this Complaint which alleges that defendant has failed to hire Stricker because of his age and that less qualified individuals under the age of 40 have been hired.

The Complaint was filed on September 29, 2006. Stricker again applied with DHL for the casual driver position in January 2007. He asserts that he submitted an updated application and was interviewed as part of an open house session. He contends that although he was told that his application was impressive, he was well-qualified for the position and would be hearing from DHL shortly, he has not been hired.

This matter is now before the Court upon Motion of Defendant DHL Express (USA), Inc. for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

6

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial.  If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most

favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th

Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562

(6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must

"produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53

F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence

of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the

evidence is "merely colorable" and not "significantly probative," the court may decide the

legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

The Age Discrimination in Employment Act (ADEA) provides that it is unlawful for

7

an employer "to fail or refuse to hire ... or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In order to establish employment discrimination under the ADEA, the plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment in accordance with the *McDonnell Douglas/ Burdine* burden-shifting framework.

In order to state a prima facie case of age discrimination in a failure to hire case, a plaintiff must show that: (1) he was a member of the protected class (i.e., at least 40 years old at the time of the alleged discrimination), (2) he applied and was qualified for the position in question, (3) he was considered and denied the position and (4) he was rejected in favor of a substantially younger person with similar qualifications.  *Pucci v. Basf Corp.*, 55 Fed.Appx. 243, (6th Cir. 2002)

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. If the defendant then articulates such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination.  *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307 (6th Cir. 2007)

Pretext is established by showing that 1) the stated reasons had no basis in fact, 2) the stated reasons were not the actual reasons, or 3) that the stated reasons were insufficient to explain the defendant's action.  However, "[a] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was

the real reason." *Hughes v. General Motors Corp.,* 212 Fed.Appx. 497 (6th Cir. 2007) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Plaintiff does not argue that it has direct evidence of age discrimination.[1] Accordingly, plaintiff must proceed via the circumstantial method.  Defendant argues that plaintiff fails to establish a prima facie case because Stricker was not qualified for the position.[2]

Defendant contends that while Stricker met the minimum age, license and driving record requirements, he lacked both the delivery/industry experience and customer service aptitude that DHL sought in filling the position.   Defendant additionally asserts that while Stricker had limited experience delivering flowers, phone books and plated products, this experience was not included on his application or resume, nor was it otherwise communicated to DHL.  Finally, defendant asserts that Stricker did not have the customer service skills required for the position.

With regard to the customer service skills requirement, defendant points to Joe George's testimony that among the qualifications he was looking for in the casual driver position was a "customer service oriented" person who was able to communicate and keep the customer number one, was confident and somewhat groomed.  Defendant also points to

---

[1]     According to Stricker, when he told Joe George that he met the stated requirements for the position but had not heard anything, George responded that DHL was "looking for pizza delivery drivers."  Stricker interpreted this to mean that DHL was looking for young drivers because, in his experience, pizza delivery drivers are young.  Plaintiff, however, does not argue that this is direct evidence of discrimination.

[2]     Defendant does not dispute the remaining elements of the prima facie case.

9

Ronald Dargay's testimony that he was looking for "customer service oriented people" who had a positive outlook, was a good communicator and approachable.  Additionally, defendant points to the job description which listed "essential functions" as including establishing and maintaining courteous and business-like relations with customers, and assisting and responding to customers. (Doc. 18 Ex. 6)  Finally, the Monster.com advertisement stated as a minimum qualification "good customer service skills."

George testified that when he spoke with Stricker, he noted that he had the requirements for the position but "did not present himself well."  George testified that Stricker "didn't communicate well" and George had the "sense that [Stricker] was just dropping off applications like he needed to be somewhere."   Additionally, Stricker "wasn't prepared" and "[r]eally didn't look me in the eye."  Finally, Stricker did not offer any elaboration on his delivery experience other than was listed in the application.   (George depo. 35-37)

Dargay testified that after his conversation with Stricker he informed the hiring official that he was not the type of person DHL was looking to hire because he had dirty clothes and messy hair, and he had an aggressive presence.  Dargay considered Stricker's presence to be aggressive based on his loud manner of communicating, his leaning toward Dargay on the counter, being adamant about continuing the conversation, getting progressively louder and presenting repetitive questions.  (Dargay depo. 26-30)

Plaintiff argues that Stricker satisfies this prong of the prima facie case.  For the following reasons, this Court agrees.

In *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575 (6th Cir. 2003), the Sixth Circuit stated, "At the prima facie stage, a court should focus on a plaintiff's *objective*

10

qualifications to determine whether he or she is qualified for the relevant job." That court

further recognized,

> The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.

*Id.* at 576.

Based on the Plain Dealer advertisement, to which Stricker responded in submitting

his applications, he was objectively qualified for the position.  According to Stricker's

deposition testimony, he satisfied the stated minimum requirements for the position (i.e., he

was 21 years of age, and had a clean driving record and Class A or B Commercial Drivers

License with Airbrakes and Hazmat endorsements.)  (Stricker depo. 23-24) As plaintiff

satisfies the prima facie case, the burden shifts to defendant to assert its legitimate reasons for

its decision.

Defendant has articulated non-discriminatory reasons for not hiring Stricker.  In

particular, defendant states that Stricker's applications and resumes did not demonstrate that

he had the type of delivery and driving experience DHL was seeking for the position.

Additionally, when provided the opportunity to speak with DHL supervisors regarding his

application, he did not discuss his part-time delivery experiences. (*See* Stricker depo. 67,

109.) When speaking with George, Stricker did not communicate well, appeared unprepared,

did not maintain eye contact, and appeared to have one foot out of the door in order to drop

off applications at several other businesses.  When speaking with Dargay, Stricker's

appearance was sloppy and messy, and his demeanor was aggressive.   Both George and

11

Dargay stressed that they sought employees who were customer service oriented, and Stricker's appearance and behavior did not present well with regard to this trait.  George, who had reviewed Stricker's application prior to speaking with him, concluded based on their conversation that he would not hire Stricker because he did not have the characteristics George sought in a good courier.  Dargay, who did not review Stricker's application, determined based on his conversation with Stricker that he was not the type of person that DHL was looking to hire.

Plaintiff argues that defendant's stated reasons are a pretext for age discrimination based on the assertions stated below.  For the following reasons, the Court finds that plaintiff fails to establish pretext.

First, plaintiff claims that although defendant has asserted that Stricker was not qualified and lacked customer service skills, DHL never took the time to review his application as it did with the substantially younger persons which it hired.  Further, DHL concluded that Stricker lacked customer service skills based on the brief conversations he had with George and Dargay who did not inquire as to his customer service experience.  Indeed, plaintiff contends, Stricker's resume clearly shows customer service qualifications by his work as a firefighter/EMT, City of Cleveland water and electric meter reader, and high school referee and baseball umpire.   Plaintiff also asserts that Stricker's resume shows that he delivered small packages for delivery service firms.

As stated above, however, George did review Stricker's application prior to his conversation with him.  Dargay testified that he did not review Stricker's application but that based on his conversation with him, he informed the DHL person responsible for hiring that

12

Stricker was not the type of person they were looking to hire.  Stricker's conversations with George and Dargay were both as a result of Stricker's request.[3]  George testified that he met with Stricker at the customer service counter because DHL's clerical receptionist informed him that Stricker "had been there before," was persistent and said he was "not leaving until [he] talked to somebody."  Dargay testified that a DHL agent requested that he come to the customer counter to speak with Stricker because he "was demanding to see somebody about his employment with DHL."   While neither George nor Dargay inquired as to Stricker's customer service skills, he did not offer such information even though he requested the face-to-face meetings.  While Stricker reiterated to George that he had the requirements for the position, he did not offer further qualifications and George perceived him as unprepared, not communicating well and lacking in other characteristics that George considered to be desirable for the position.  Stricker also informed Dargay that he satisfied the requirements for the position, but Dargay perceived Stricker as aggressive.  Stricker was loud and mentioned more than once that he had not received a callback despite the fact that he had put in multiple applications.

Plaintiff contends that George and Dargay did not inquire as to his customer service experience.  Based on the nature of the conversations, Stricker did not make himself amenable to further inquiry by the managers.   Stricker, who had demanded the meetings, obviously appeared defensive and aggressive, as well as unprepared and not communicating well.

---

[3]     While plaintiff complains that defendant gives these "fleeting"conversations the import of job interviews, it was Stricker who essentially demanded to speak to the DHL representatives to determine what exactly DHL was looking for and why he had not received any callbacks.

13

Furthermore, while plaintiff contends that Stricker's resume clearly shows customer service qualifications by his work as a firefighter/EMT, City of Cleveland water and electric meter reader, and high school referee and baseball umpire, defendant argues that common sense dictates otherwise.   Even so, plaintiff' subjective view of Stricker's qualifications and its assertion that Stricker's past employment shows customer service experience is insufficient to establish pretext.  *See Quinn-Hunt v. Bennett Enterprises, Inc*., 211 Fed.Appx. 452 (6th Cir. 2006) (citations omitted) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") Plaintiff also asserts that Stricker's resume shows that he delivered small packages for delivery service firms.  As discussed above, however, neither Stricker's applications nor his resumes showed the delivery experience to which he testified in his deposition.

Second, plaintiff contends that DHL has asserted shifting explanations for not hiring Stricker.  Plaintiff points to the position statement submitted by DHL to the EEOC following the filing of Stricker's charge of discrimination wherein defendant stated that Stricker was not hired because he did not meet the qualifications for the position.  In particular, defendant stated:

> George conducted a brief face to face interview with Stricker on or about March 3, 2005.  In reviewing Stricker's qualifications, it was determined that he did not meet the requirements of the job.  Stricker did not possess the relevant driving experience, let alone pick-up and delivery experience in a fast-paced environment such as DHL's.

(Doc. 20 Ex. N) Plaintiff contends that defendant's second statement to the EEOC after a probable cause finding was indicated, contains a change in its position because it now asserts that George determined based on the brief interview with Stricker that "Stricker did not exhibit the type of professional and business-like behavior required of a Courier."  (*Id.*)  Now

14

in litigation, plaintiff argues, defendant has further pointed to Stricker's failure to maintain eye contact, appearance and abrupt manner, and the fact that Stricker did not reveal his delivery experience.

The Court agrees with defendant that the reasons for not hiring Sticker have not changed.  Defendant's second statement to the EEOC had also reiterated that Stricker "did not possess relevant driving experience, let alone pick up and delivery experience in a fast-paced environment."  This was consistent with defendant's first position statement and defendant was merely providing additional information as requested by the EEOC.  George's and Dargay's deposition testimony herein regarding their impressions of Stricker following their conversations with him are also consistent with DHL's earlier statement to the EEOC that Stricker "did not exhibit the type of professional and business-like behavior required of a Courier."

Third, plaintiff contends that Stricker's qualifications were far superior to some of those hired for the position.  Robert Normile, Jr. was only 20 years old when hired and did not meet the stated 21 years of age requirement.  Nor did he have work-related driving or delivery experience.  His application does not elaborate specific customer service skills.  (Doc. 20 Ex. E)  Robert Haywood, age 37, had only two weeks of truck driving experience and no small package delivery experience. (Doc. 20 Ex. F) Christopher Willard, age 35, had no relevant experience other than a summer with the United States Postal Service as a casual carrier. Joseph Mommers, who at age 44 was the sole applicant hired within the protected age group between January 2005 and prior to the filing of Stricker's EEOC charge, had no relevant experience.  He previously loaded and unloaded aircraft at Cleveland Hopkins International

15

Airport.  Plaintiff also points out that Mommers is substantially younger than Stricker.

Plaintiff asserts that neither Haywood, Willard, nor Mommers had a CDL.[4]

The Sixth Circuit has stated, "Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Bender v. Hecht's Department Stores,* 455 F.3d 612 (6th Cir. 2006). Thus, where a plaintiff shows probative evidence of discrimination, "that evidence taken together with evidence that the plaintiff was as qualified or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment." *Id.* at 626-627.  But, where "there is little or no probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.* at 627.

Plaintiff asserts that it has probative evidence of discrimination.   For the following reasons, this Court disagrees.

Plaintiff asserts that none of the individuals hired were subjected to "a George reception area conversation/interview to determine their customer service skills."  Stricker, however, requested the meeting, as he requested the one that he had with Dargay.  Because of Stricker's attitude during these meetings, both managers concluded that he had characteristics

---

[4]     Although Joe George testified that Mommers did not have a CDL when hired, plaintiff does not point to evidence showing that Normile did not have one. Plaintiff asserts that Willard's deposition testimony shows that he did not earn a CDL until almost two years after he was hired.  The testimony, however, is not submitted by plaintiff.   Defendant, however, does not dispute that these applicants did not have a CDL.

16

that were not desired for the position.

Plaintiff points to his argument that some of the younger individuals hired did not meet all the stated requirements for the position, and that Normile, Haywood, Willard and Mommers also lacked small package delivery experience and customer service skills.  This argument goes to whether Stricker was better qualified for the position than the younger applicants and does not constitute additional probative evidence of discrimination.

Plaintiff asserts that DHL's deviation from its normal procedure regarding rejection letters is probative of discrimination.  The Court finds this argument unpersuasive.  The evidence does show that applicants who are not hired with DHL are not usually sent rejection letters as Stricker was.  (George depo. 44) George testified, however, that after speaking with Stricker he made the decision not to hire him and he contacted DHL's human resources department to inquire as to whether there was a letter to be sent to candidates who were not going to be considered.  (*Id.* 30-31) As discussed above, George testified as to his impressions of Stricker based on their conversation.  Inasmuch as the receptionist had told George prior to his meeting with Stricker that Stricker was persistent, had been there before and was not leaving until he talked to someone, it is reasonable to assume that George decided to send a written rejection so that Stricker clearly understood that he was not being considered for the position.

Plaintiff asserts that DHL's 2007 assessment of Stricker's qualifications as impressive is also probative of pretext.  As defendant points out, however, plaintiff relies on Stricker's own testimony and there is no other evidence that DHL considered his credentials impressive at that point.  Assuming it is true that defendant considered Stricker's credentials to be

17

impressive, this does not cure Stricker's lack of communication and customer service skills.

Plaintiff contends that George and Dargay applied different driver hiring standards as evidenced by Dargay's testimony that he would not hire drivers under the age of 21 or who lacked a CDL, while George did so. Also, Dargay was familiar with specific kinds of trucks and fire apparatus, while George was not. This is not probative of discrimination. George was the hiring official in Middleburg Heights. Dargay was the district field manager at the Beachwood facility and was not responsible for hiring.

Because plaintiff does not have other evidence of discrimination, it must show that Stricker's qualifications were significantly better than the successful applicants' qualifications. Plaintiff cannot do so. With regard to plaintiff's assertion that the younger applicants lacked small package delivery experience or customer service skills, neither did Stricker's applications or resume reflect such qualifications. Even assuming Stricker had superior delivery experience, this information was not conveyed to defendant prior to its decision not to hire him. While Stricker may have met the stated requirements for the position, his face-to-face conversations with two different managers gave them a poor impression of him. Plaintiff complains that George and Dargay did not ask Stricker what type of pick-up and delivery service or customer service experience he had, and did not ask him to explain the type of vehicles he had operated. Clearly, however, the conversations were not conducive to this. On both occasions, Stricker wanted to know "what it takes to get hired by DHL." He appeared unprepared and aggressive. It is unreasonable to expect either manager to take the opportunity to probe into his prior experience.

In the absence of other probative evidence, because plaintiff has not demonstrated that

18

Stricker's delivery and customer service qualifications were significantly better than those chosen and because Dargay and George believed Stricker displayed undesired characteristics, he cannot survive summary judgment on the basis that he fulfilled the stated requirements of the position while others may not have fulfilled some of them.

Moreover, defendant has pointed out that the younger drivers who were hired were not so lacking in qualifications.  Normile's application did identify customer service in two of his prior positions of employment.  Haywood had over the road driving experience and had operated his own carpet cleaning business for ten years, which any reasonable employer would assume to involve customer service.  Plaintiff acknowledges that Willard had small package delivery experience driving for the U.S. Postal Service, even if it was for only one summer.  He had also worked with clients as a financial advisor. Mommers had experience loading and unloading aircraft. George testified that he considered this similar to what DHL does.

Additionally, defendant points out that Robert Favino, age 36, another individual hired instead of Stricker between February and March 2005 drove for UPS, a DHL competitor. (George depo. 60-61) Robin Marquardt, age 45, as plaintiff acknowledges, worked as a delivery driver for Pepsi-Cola.

Thus, while Stricker may have held the minimum requirements for the position, he was not necessarily far superior in qualifications to those hired and lacked other characteristics which defendant sought in addition to appearing aggressive and unprepared after requesting meetings with top DHL representatives.

Finally, plaintiff points out that nine of the ten individuals in the protected age group

19

who were hired between January 1, 2005 and July 31, 2005 were hired after defendant was served with Stricker's EEOC charge.   Furthermore, of the ten individuals over 40 years old, five were substantially younger than Stricker, i.e., eight to 12 years younger.

Defendant, however, submits evidence that in the six months before Stricker applied for the position (and, consequently, prior to filing the EEOC charge), DHL hired three drivers over 40 in its Beachwood facility (ages 51, 46 and 45).  (Kathleen Wrinkle aff.)  This evidence deflates plaintiff's assertion that DHL hired older drivers only after Stricker filed his EEOC charge.

For these reasons, plaintiff fails to establish pretext and, accordingly, the ADEA claim fails.

**Conclusion**

For the foregoing reasons, the Motion of Defendant DHL Express (USA), Inc. for Summary Judgment is granted.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 11/19/07

20